IN THE UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

CA 08 193S

| | | |
|---|---|---|
| RAYMOND LABRIE, | ) | |
| Plaintiff, | ) | CIVIL ACTION NO.: |
| v. | ) | COMPLAINT AND DEMAND FOR JURY TRIAL |
| CENTOCOR, INC. and JOHNSON & JOHNSON | ) | |
| Defendants | ) | |

**COMPLAINT**

Plaintiff, Raymond Labrie (hereafter "plaintiff"), brings this action against defendants Centocor, Inc. (hereafter "Centocor") and Johnson & Johnson (hereafter "J&J"), (collectively, "defendants"), and alleges as follows:

**OVERVIEW**

1. This is a civil action seeking compensatory and punitive damages arising from the manufacture, testing, marketing, sale, detailing, use and infusion of a drug called Remicade®, which is alleged by plaintiff to be defective and unreasonably dangerous for its intended purpose and for which there were inadequate warnings, which resulted in severe pain, suffering and permanent injuries to the Plaintiff.

**JURISDICTION AND VENUE**

2. The Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332, as the amount in controversy exceeds $75,000 exclusive of interest and costs and because this action is brought by an individual who is a citizen of a state other than the defendants.

3. This Court has personal jurisdiction over the defendants pursuant to R.I.G.L. § 9-5-33, as plaintiff's claims arise out of the defendants' transaction of business and the commission of tortious acts within the State of Rhode Island, and the Court has general personal jurisdiction over the defendants by virtue of their substantial, continuous, and systematic contacts with the State of Rhode Island, unrelated to plaintiff's claims.

4. Venue is proper in this Court pursuant to and in accordance with 28 U.S.C. § 1391, as the defendants have significant contact with this district by virtue of doing business within this judicial district and because a substantial part of the events and/or omissions giving rise to the claims occurred within this district.

## PARTIES

5. The plaintiff is a citizen and resident of Providence County, Rhode Island.

6. Upon information and belief, defendant Centocor is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania, with its principal place of business at 800/850 Ridgeview Drive, Horsham, PA 19044. Centocor is authorized to do business in the State of Rhode Island and is doing business in Rhode Island. The plaintiff is requesting that Centocor waive service of summons in this case. In the event that Centocor does not waive service of the summons, then Centocor should be served by serving its President, Neal Fowler, Centocor, Inc., 800/850 Ridgeview Drive, Horsham, PA 19044. Plaintiff will request issuance of summons for this defendant if it does not waiver service of summons.

7. Upon information and belief, defendant J & J is a corporation organized and existing under the laws of the State of New Jersey, with its principal place of business at One Johnson & Johnson Plaza, New Brunswick, New Jersey 08933. J & J is authorized

to do business in the State of Rhode Island and is doing business in Rhode Island. The plaintiff is requesting that J & J waive service of summons in this case. In the event that J & J does not waive service of the summons, then J & J should be served by serving its CEO and Chairman, William C. Weldon, Johnson & Johnson, One Johnson & Johnson Plaza, New Brunswick, New Jersey 08933. Plaintiff will request issuance of summons for this defendant if it does not waiver service of summons.

8. Upon information and belief, defendant Centocor is a wholly owned subsidiary of defendant J & J.

9. At all times material hereto, Remicade was designed, developed, manufactured, tested, packaged, promoted marketed, distributed, labeled and/or sold by defendants Centocor and J & J (hereafter collectively referred to as "defendants").

## FACTUAL ALLEGATIONS

10. Upon information and belief, Centocor is a wholly owned subsidiary of J & J and bother were at all times material hereto in the business of designing, developing, manufacturing, testing, packaging, promoting, marketing, distributing, labeling and selling Remicade (the drug), which is a prescription medication used for several inflammatory disorders involving the immune system, in Rhode Island and throughout the United States. Upon information and belief, defendant Centocor is primarily responsible for designing, manufacturing, marketing and distributing the drug, under the direction and control of J & J. J & J further assumed certain pharmacosurveillance duties related to the potential side effects of Remicade for Centocor.

11. Further, defendants Centocor and J & J put the drug into the stream of commerce without any alteration or modification by any distributor or retailer.

12. Remicade (infliximab) is a genetically engineered monoclonal antibody that binds to a protein called tumor necrosis factor-alpha (TNF-alpha). This antibody is manufactured using cells containing human and mouse antibody genes.

13. Remicade was recommended for approval for the treatment of adult Crohn's disease by the FDA Gastrointestinal Drugs Advisory Committee in May 1998, and was approved and licensed in August 1998 by the FDA for the short-term treatment of Crohn's disease. The defendants aggressively marketed Remicade shortly after its approval by the FDA. Remicade was then approved for signs and symptoms of rheumatoid arthritis in November 1999; the inhibition of structural damage due to rheumatoid arthritis in December 2000; and for the improvement in physical function in rheumatoid arthritis in February 2002. The defendants also sought and received approval for the treatment of other conditions, including psoriatic arthritis, ankylosing spondylitis, and ulcerative colitis. Recently, defendants have received approval to use Remicade to treat Crohn's disease for children over the age of 6 years. In 2004, for the first time, defendants created a medication guide to be distributed by the prescribing physicians to the patient to warn them about the increased risk of lymphomas and other cancers in patients being treated for Crohn's disease. This is the very same condition of which plaintiff had been receiving Remicade treatment since approximately 2001.

14. On October 22, 1999, the Medical Officer reviewer for the FDA reported his findings with respect to the efficacy and safety of Remicade to treat the signs and symptoms of rheumatoid arthritis. In a discussion about the data submitted by the defendants regarding Remicade, the reviewer notes that there were four adverse events involving serious malignancies, which occurred during some of the clinical trials

associated with Remicade. The Medical Officer concluded that while he was approving it for the treatment of rheumatoid arthritis, he was encouraging defendants to alert physicians and consumers to report any malignancies, which occurred while taking Remicade. The Medical Officer's statement acknowledges a potential safety signal associating Remicade with lymphomas and other cancers.

15. On August 17, 2001, the Arthritis Drugs Advisory Committee (AAC) for the FDA issued a safety update on TNF-blocking agents, including Remicade. The Committee observed that lymphoma had been observed with Remicade treatment in previous clinical trials, and that the majority of the reports involved Remicade treatments for patients with rheumatoid arthritis and Crohn's disease versus another TNF-blocking agent called Enbrel. The Committee further recognized that during the post-licensure period for the drug encompassing March 1999 to December 2000, 10 cases of lymphoma were reported after Remicade treatment. While the reporting rate of lymphoma approximated the estimated incidence rate of lymphoma in the general population, the Committee recognized that underreporting remained a major cause of concern and that more long-term data needed to be collected before labeling changes would be implemented.

16. On March 4, 2003, the AAC met again to discuss additional safety data that had been collected by the defendants and the FDA, as well as to discuss the overall safety profile of the class of drugs that Remicade belongs to, which are called the TNF-blocking agents. A more extensive review of the risks associated with Remicade was reviewed, mainly focusing on the risk of lymphomas associated with these drugs. The Committee was presented with clinical trial data that showed that lymphomas have been observed in

clinical trials for Remicade and that as more data became available, it became possible to calculate the relative frequency of lymphomas in the treated population to compare to the general population. Standardized incidence ratios are used to calculate the frequency an adverse event occurs associated with a drug compared to the same frequency found in the general population. The standardized incidence ratios (SIRs) for lymphoma associated with Remicade were found to be greater than that for in the general population. The SIR for lymphomas for Remicade was 6.35 with statistically significant 95% confidence intervals for rheumatoid arthritis patients, and the SIR for Crohn's disease patients was 8.7. There were no lymphomas reported for placebo exposed patients in these clinical trials.

17. Defendants' presentation to the AAC recognized these increased risks of lymphomas and malignancies, but argued that the data was inconclusive and could not establish a causal relationship, and requested that no labeling changes should occur with respect to Remicade. Defendants agreed to continue to use registries, clinical trials, and post-marketing safety reports to monitor the frequency of these events.

18. In October 2004, and during the time that the plaintiff was undergoing Remicade treatment, Centocor and J & J sent out a "Dear Doctor" or "Dear Healthcare Provide" letter notifying healthcare providers that a link between the drug Remicade and lymphoma had been detected, and informing doctors that they were adding a new warning about the increased risks of malignancies, especially lymphomas. Upon information and belief, one of the reasons the defendants finally added an updated warning in the Remicade package insert regarding malignancies was because this experimental study showed an independent increased risk of lymphomas and other

cancers in patients with COPD. No longer could defendants argue that only such risks were increased due to rheumatoid arthritis or Crohn's disease and not Remicade. Defendants never adequately and honestly informed Plaintiff or his doctors regarding these risks associated with the use of Remicade.

19. At all times material hereto, the defendants failed to properly disclose safety hazards associated with Remicade.

20. The defendants continually downplayed the risk of adverse effects associated with Remicade, including the risk of developing lymphoma.

21. The packaging insert from August 1998 through 2002 stated: "Patients with long duration of Crohn's disease and chronic exposure to immunosuppressant therapies are more prone to develop lymphomas and infections (see *ADVERSE REACTIONS, Lymphoproliferative Disorders and Infections).* The impact of Infliximab treatment on these phenomena is unknown."

22. However, the available data that had been performed to examine the baseline risk of lymphoma in patients with inflammatory bowel disease was conflicting, as many such studies showed little or no increase risk of lymphoma. Likewise, the statement that the "impact" of Remicade treatment on lymphomas "is unknown" is in conflict with available data which supported a further increase in lymphoma risk associated with Remicade treatment.

23. In October 2004, the defendants disclosed for the first time that a link between the drug Remicade and lymphoma had been detected, and that new warnings about the increased risks of malignancies, especially lymphomas, were being added to the drug's label.

24. At all times material hereto, the defendants, knew or should have known that the risks of Remicade included life threatening complications and side effects.

25. At all times material hereto, the defendants, by and through their agents, servants and/or employees, negligently, recklessly and/or carelessly marketed, distributed and/or sold the drug without adequate instructions or warnings of the drug's serious side effects and unreasonably dangerous risks, including lymphoma.

26. Plaintiff Raymond Labrie was prescribed and used Remicade from approximately 2001 to 2005. Plaintiff began Remicade therapy for his inflammatory bowel disease, also known as Crohn's disease. In May 2005, plaintiff went to his physician for an evaluation of a "lump" on his neck. Subsequent evaluation and testing confirmed that the plaintiff had lymphoma.

27. Plaintiff subsequently underwent radiation treatment for his lymphoma, causing him pain and discomfort. Plaintiff was also forced to miss work due to his diagnosis of lymphoma and subsequent radiation treatments.

28. Had the defendants properly disclosed the risks associated with Remicade, plaintiff Raymond Labrie would not have used it.

29. The direct and proximate cause of the plaintiff's lymphoma was his infusion of Remicade.

30. As alleged herein, as a direct and proximate cause of the defendants' negligence and wrongful conduct and omissions, and the unreasonably dangerous and defective characteristics of the drug, plaintiff Raymond Labrie suffered severe and permanent physical injuries, including but not limited to lymphoma. Plaintiff has lost past earnings and has suffered a loss of earning capacity. Plaintiff has endured

substantial pain and suffering. He has incurred significant expenses for medical care and treatment, and will continue to incur such expenses in the future. Plaintiff has suffered and will continue to suffer economic loss, and has otherwise been physically, emotionally and economically injured. Plaintiff's injuries and damages are permanent and will continue into the future. The plaintiff seeks actual and punitive damages from the defendants as alleged herein.

## CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF (NEGLIGENCE)

31. Plaintiff adopts by reference paragraphs 1-30 above, each inclusive, as though fully set forth herein.

32. Defendants directly or indirectly, negligently and/or defectively designed, developed, manufactured, tested, inspected, packaged, promoted, marketed, distributed, labeled, and/or sold Remicade.

33. At all times material hereto, the defendants, and each of them individually, had a duty, including to the plaintiff, to exercise reasonable care in the design, development, manufacture, testing, inspection, packaging, promoting, marketing, distributing, labeling, and/or sale of Remicade.

34. Defendants, and each of them individually, breached that duty and were negligent in their actions and omissions toward plaintiff and their prescribing physicians in ways which include, but are not limited to, the following:

a. In failing to include adequate warnings with the drugs that would alert plaintiff's prescribing physician and plaintiff to the potential risks and serious side affects of the drug, including lymphoma;

b. In failing to adequately perform pre-market testing of the drug;

c. In failing to perform appropriate post-market surveillance of the drug;

d. In failing to adequately warn plaintiff's prescribing physician that all patients, including plaintiff, should be pre-screened for malignancies or pre-malignancies prior to therapy with Remicade;

e. In failing to provide adequate post-marketing warnings or instructions after the defendants knew or should have known of the significant risks of developing lymphoma from using of the drug;

f. In failing to display the warnings that were provided in a manner which would properly alert plaintiff's prescribing physician and plaintiff as to the seriousness of the risk of developing lymphoma that had been reported in association with the drug;

g. In its design, development, implementation, administration, supervision and/or monitoring of clinical trials for the drug; and

h. In representing that the drug was safe for its intended use when, in fact, the drug was unsafe for its intended use.

35. But for Defendants' negligent conduct as described herein, plaintiff would not have used the drug and would not have suffered the personal injuries and economic harm alleged herein.

36. As a direct and proximate cause of the negligence of the defendants, plaintiff has suffered serious and permanent injuries including, but not limited to lymphoma, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, loss of earnings and loss of the ability to earn money in the future.

WHEREFORE, Plaintiff demands judgment against Defendants for damages, including punitive damages, as well as all costs of this action.

**SECOND CLAIM FOR RELIEF**
**(STRICT LIABILITY)**

37. Plaintiff adopts by reference paragraphs 1-36 above, each inclusive, as though fully set forth herein.

38. At all times material hereto, Defendants engaged in the business of designing, developing, manufacturing, testing, inspecting, packaging, promoting, marketing, distributing, labeling, and/or selling Remicade.

39. The drug is defective and unreasonably dangerous to consumers, including plaintiff.

40. At all times material hereto, the drug was expected to reach and did reach prescribing physicians and consumers in the State of Rhode Island and throughout the United States, including plaintiff, without substantial change in the condition in which the drug was sold.

41. At all times material hereto, plaintiff used the drug in a manner that the defendants reasonably could have foreseen.

42. At all times material hereto, the drug was defective and unreasonably dangerous, making it unfit for its ordinary purposes and subjecting Decedent to risks that exceeded the benefit of the drug.

43. At all times material hereto, defendants made conscious design choices that failed to anticipate the reasonably foreseeable and grave risks of ordinary use, including the risks of lymphoma. A safer alternative design was feasible, but the defendants chose not to employ it.

44. Had plaintiff known the product's design was unreasonably dangerous, he would not have taken the drug and he would not have developed lymphoma.

45. As a direct and proximate cause of the defective condition of the drug, plaintiff sustained serious and permanent injuries including, but not limited to lymphoma, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical care and treatment, loss of earnings and loss of the ability to earn money.

WHEREFORE, Plaintiff demands judgment against Defendants for damages, including punitive damages, as well as all costs of this action.

**THIRD CLAIM FOR RELIEF**
**(MISREPRESENTATION)**

46. Plaintiff adopts by reference paragraphs 1-45 above, each inclusive, as though fully set forth herein.

47. Defendants misrepresented the safety of Remicade and fraudulently, intentionally, recklessly, or negligently concealed material adverse information regarding the safety of the drug when it had a duty to disclose such information to the consuming public, including plaintiff, and their physicians.

48. Defendants and/or its agent(s) made false or misleading representations of material fact regarding the safety and efficacy of Remicade with knowledge its falsity for the purpose of inducing prescribing physicians to prescribe the drug and inducing patients such as plaintiff to use take drug. Plaintiff's physicians reasonably relied on these false representations in prescribing the drug to plaintiff, and plaintiff reasonably relied upon these false representations in deciding to be infused with the drug.

49. Plaintiff was prescribed and used the drug for its intended purpose.

50. Plaintiff could not have discovered any defect in the drug through the exercise of reasonable care.

51. The defendants, as manufactures and/or distributors of the drug, are held to a level of knowledge of an expert in the field.

52. The warnings that were given by the defendants were inaccurate, unclear and/or ambiguous.

53. For example, defendants fraudulently misrepresented to plaintiff that Remicade was safe and effective, that the benefits of taking the drug outweighed any risks, and misrepresented and concealed safety and effectiveness information regarding the product, including representing in the drug's label in 2002 there was insufficient data to determine whether Remicade contributed to the development of various malignancies in clinical trials, and representing in the package insert in 2003 that "[t]here have been some patients that while taking Remicade developed other types of cancer, but, the number of people taking Remicade that developed cancer does not seem to be much different from what you would expect to see in people who are not taking Remicade."

54. As a direct and proximate cause of the drug's defective and inappropriate warnings, plaintiff has sustained serious and permanent injuries including, but not limited to lymphoma, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, loss of earnings and loss of the ability to earn money in the future.

WHEREFORE, Plaintiff demands judgment against Defendants for damages, including punitive damages as well as all costs of this action.

## FOURTH CLAIM FOR RELIEF
## (BREACH OF IMPLIED WARRANTY)

55. Plaintiff adopts by reference paragraphs 1-54 above, each inclusive, as though fully set forth herein.

56. The defendants designed, manufactured, marketed, distributed, supplied and sold Remicade for the treatment of Crohn's disease.

57. At the time the defendants manufactured, marketed, distributed, supplied and/or sold Remicade, they knew of the use for which the drug was intended and impliedly warranted it to be of merchantable quality and safe and fit for such use.

58. Plaintiff, individually and through his prescribing physician, reasonably relied upon the skill, superior knowledge and judgment of the defendants.

59. Plaintiff was prescribed, purchased, and used the product for its intended purpose.

60. Due to defendants' wrongful conduct as alleged herein, plaintiff could not have known about the nature of the risks and side effects associated with the subject product until after he used it.

61. Contrary to the implied warranty for the drug, Remicade was not of merchantable quality, and was not safe or fit for its intended uses and purposes, as alleged herein.

62. As a direct and proximate cause of defendants' breach of implied warranty, plaintiff has sustained serious and permanent injuries including, but not limited to lymphoma, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, loss of earnings and loss of the ability to earn money in the future.

WHEREFORE, Plaintiff demands judgment against Defendants for damages, including punitive damages as well as all costs of this action.

**FIFTH CLAIM FOR RELEIF**
**(BREACH OF EXPRESS WARRANTY)**

63. Plaintiff adopts by reference paragraphs 1-62 above, each inclusive, as though fully set forth herein.

64. The defendants expressly warranted that Remicade was safe and fit for use by consumers, including plaintiff, for its intended purpose, that it was of merchantable quality, and that it was adequately tested and fit for its intended use.

65. At the time of the making of these express warranties, the defendants knew or should have known of the purpose for which Remicade was to be used and warranted the same to be, in all respects, fit, safe, and effective and proper for such purpose.

66. At the time of the making of the express warranties the defendants knew or should have known that, in fact, these representations and warranties were false, misleading and untrue.

67. Members of the medical community, including plaintiff's physicians, reasonably relied upon the skill and judgment of defendants, and upon said express warranties, in prescribing, recommending and/or dispensing Remicade.

68. The plaintiff relied on the defendants' express warranties.

69. The defendants breached these express warranties, in that Remicade was not safe and effective for its intended use, and, in fact, causes lymphoma and other malignancies with much greater frequency than safer alternative methods of managing Crohn's disease; that it was not of merchantable quality, and that it had not been adequately tested for its intended use.

70. By the conduct alleged, defendants, by and through their agents, servants and/or employees, expressly warranted to plaintiff and plaintiff's physicians that the drug was merchantable and fit for the purpose intended.

71. As a direct and proximate cause of defendants' breach of implied warranty, plaintiff has sustained serious and permanent injuries including, but not limited to lymphoma, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, loss of earnings and loss of the ability to earn money in the future.

WHEREFORE, Plaintiff demands judgment against Defendants for damages, including punitive damages as well as all costs of this action.

**SIXTH CLAIM FOR RELIEF**
**(VIOLATION OF CONSUMER PROTECTION STATUTES)**

72. Plaintiff adopts by reference paragraphs 1-71 above, each inclusive, as though fully set forth herein.

73. At all times material hereto, the defendants engaged in commercial conduct by selling Remicade.

74. At all times material hereto, the defendants misrepresented and omitted material information regarding Remicade by failing to disclose known risks.

75. The defendants' misrepresentations and concealment of material facts constitute unconscionable commercial practices, deception, fraud, false pretenses, misrepresentations, and/or the knowing concealment, suppression, or omission of material facts with the intent that other rely on such concealment, suppression, or omission in connection with the sale and advertisement of Remicade, in violation of Rhode Island General laws § 6-13.1-1 et. seq. and other similar statutes.

76. The defendants violated this statute by knowingly and falsely representing that Remicade was fit to be used for the purpose for which it was intended when the defendants knew it was defective and dangerous, and by other acts alleged herein.

77. The defendants engaged in the deceptive acts and practices alleged herein in order to sell Remicade to the public, including plaintiff.

78. Plaintiff, therefore, seeks all damages recoverable under the Rhode Island General Laws. Specifically, plaintiff seeks all damages including compensatory damages, equitable and declaratory relief, punitive damages, costs and reasonable attorneys' fees.

79. As a direct and proximate cause of the defendants' violation of Rhode Island General laws § 6-13.1-1 et. seq., plaintiff has sustained serious and permanent injuries including, but not limited to lymphoma, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, loss of earnings and loss of the ability to earn money in the future.

WHEREFORE, Plaintiff demands judgment against Defendants for damages, including punitive damages as well as all costs of this action.

**FRAUDULENT CONCEALMENT**

80. Defendants are estopped from asserting a statute of limitations defense because they fraudulently concealed their wrongful conduct from plaintiff. The defendants had actual knowledge of the defective and dangerous nature of Enbrel, and failed to conduct adequate research and/or reveal the true results of the research on the drug and failed to establish its safety and efficacy. The defendants had actual knowledge of their misrepresentations, negligence, breach of warranties, and false, misleading,

deceptive and unconscionable conduct. Yet, each of the defendants continued to perpetrate their wrongful conduct with the intent and fixed purpose of concealing their wrongs from plaintiff and the public at large.

**DEMAND FOR JURY TRIAL**

The plaintiff hereby demands a trial by jury on all Claims for Relief and as to all issues.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that judgment be entered by this Court in its favor against Defendants as follows:

a. Awarding actual damages to the plaintiff incidental to plaintiff's purchase and use of Remicade in an amount to be determined at trial;

b. Awarding pre-judgment interest and post-judgment interest to plaintiff;

c. Awarding the costs and the expenses of this litigation to plaintiff;

d. Awarding reasonable attorneys' fees and costs to plaintiff as provided by the law; and

e. Granting all such other relief as the Court deems necessary, just and proper.

Donald A. Migliori (RI 4936)
Motley Rice LLC
321 South Main Street, Suite 200
Providence, RI 02903
401.457.7700
401.457.7708 (facsimile)

Neil D. Overholtz
R. Jason Richards
Aylstock, Witkin, Kreis & Overholtz, PLLC
803 North Palafox Street
Pensacola, FL 32501
850.916.7450
850.916.7449 (facsimile)

Fred Thompson, II
Motley Rice LLC
28 Bridgeside Boulevard
Mt. Pleasant, SC 29465
843.216.9000
843.216.9450 (facsimile)

Dated: May 19, 2008